755 F.2d 931
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GRAND TRUNK WESTERN RAILROAD COMPANY, PLAINTIFF-APPELLEE,
v.
UNITED TRANSPORTATION UNION LOCAL LODGE 787 AND T.J.
GRANDOWICZ, JR., DEFENDANTS-APPELLANTS.
 NO. 83-3628
 United States Court of Appeals, Sixth Circuit.
 1/24/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: ENGEL, MERRITT and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants-appellants, United Transportation Union (UTU) Local 787 and its president, T.J. Grandowicz, Jr. (Grandowicz), appeal from the district court's order enjoining them from further litigating their claim that employees of the Toledo Terminal Railway Company (Toledo Terminal) are protected under a labor agreement. Plaintiff-appellee, Grand Trunk Western Railroad Company (Grand Trunk) is a common carrier for hire for transporting goods in interstate commerce and is a carrier as defined in the Railway Labor Act (RLA), 45 U.S.C. Sec. 151, First. Defendant UTU Local 787 is an unincorporated labor organization and the certified representative under the RLA of certain classes of employees of Toledo Terminal. Defendant Grandowicz is the president of UTU Local 787 and General Chairman of UTU Toledo Terminal.
 
 
 2
 This action arises out of Grand Trunk's purchase of the Detroit Toledo and Ironton Railroad Company (DT&I) and the Detroit Toledo Shoreline Railway Company (DTSL). Grand Trunk's purchase of DT&I, which is also a common carrier, was approved by the Interstate Commerce Commission (ICC) in its decision in Norfolk and Western Railway Co.--Control, 363 ICC 122 (1980) aff'd sub nom, Norfolk and Western Ry. Co. v. United States, 639 F.2d 1096 (4th Cir. 1981). Prior to the ICC's approval of Grand Trunk's purchase of DT&I, and pursuant to the provisions of 49 U.S.C. Sec. 11347[1], Grand Trunk entered into an agreement, dated September 4, 1979, with several representatives of UTU for the benefit of employees who might be adversely affected by the merger. The agreement, which the Interstate Commerce Commission (ICC) approved and adopted when it approved plaintiff's acquisition of DT&I, adopted labor protective provisions known as the New York Dock conditions. The agreement was signed by Grand Trunk and individuals representing various branches of UTU but not by any representative of Toledo Terminal employees. Section 1 of the agreement states:
 
 
 3
 Section 1. The terms and conditions imposed in New York Dock Railway--Control--Brooklyn Eastern District, 354 I.C.C. 399, as modified by the Commission's Decision served in that proceeding on February 23, 1979, ('New York Dock') shall be applied for the protection of the interests of employees of GTW, Detroit, Toledo & Ironton Railroad Company (DT&I) and the Detroit and Toledo Shore Line Railroad Company (DTSL), except as those terms and conditions are modified herein. Copy of New York Dock attached hereto and made a part thereof.
 
 
 4
 The New York Dock conditions which were attached and made a part of the agreement state, in Article III of Appendix III:
 
 
 5
 Subject to this appendix, as if employees of railroad, shall be employees, if affected by a transaction, of separately incorporated terminal companies which are owned (in whole or in part) or used by railroad . . .
 
 
 6
 An arbitration provision that appears in Section 11 of Appendix III of the New York Dock conditions provides for arbitration of disputes:
 
 
 7
 In the event the railroad and its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement of any provision of this appendix . . . within 20 days after the dispute arises, it may be referred by either party to an arbitration committee.
 
 
 8
 In the proceedings before the ICC, UTU argued that the ICC was required to ensure protection for all employees of any carrier affected by the transaction, and not merely for employees of the railroads involved in the transaction. Protection for terminal employees was not separately addressed. The ICC rejected UTU's position and held that the September 4, 1979 agreement satisfied the minimum requirements of Sec. 11347. Norfolk and Western Railway Co.--Control, 360 ICC at 531.
 
 
 9
 Pursuant to the ICC decision, Grand Trunk purchased DTSL and became its sole shareholder on April 13, 1981. Grand Trunk merged with DTSL effective October 1, 1981. On April 1, 1982 Grand Trunk and DT&I entered into a pooling agreement for consolidation of their operations. Under this agreement, Grand Trunk performs all work for DT&I at the DT&I Temperance Yard in Toledo and at all interchanges in the City of Toledo. DT&I performs all work for Grand Trunk between Shore Line subdivision mileposts 32 near Rockwood, and 50.2 near Dearoad including industry switching car inspection, clerical record keeping and any required interchange in the vicinity of Detroit. DT&I must travel over trackage of Toledo Terminal to reach Temperance Yard in Toledo.
 
 
 10
 On February 17, 1982 defendant Grandowicz wrote to the Director of Labor Relations for Grand Trunk, on behalf of employees of Toledo Terminal, asserting that employees of Toledo Terminal were being adversely affected by Grand Trunk's pooling arrangement with DT&I and claiming that Toledo Terminal employees were covered by the labor protective provisions of the September 4, 1979 agreement. Grand Trunk maintained that the matter was not subject to arbitration and brought this action seeking to enjoin any arbitration and a declaratory judgment on the issue of whether the employees of the Toledo Terminal are covered by the New York Dock conditions.
 
 
 11
 The district court held that the issue of whether employees of Toledo Terminal are covered by the New York Dock conditions is neither a major nor minor dispute, and that this action is not governed by the RLA, 45 U.S.C. Sec. 153 and thus is not subject to the RLA's arbitration proceedings. The district court also concluded that defendants are barred under principles of res judicata from litigating their claim that Toledo Terminal employees are subject to the New York Dock conditions because the ICC, in an order affirmed by the Fourth Circuit, had rejected the position put forth by UTU that 40 U.S.C. Sec. 11347 mandates that the ICC protect all railroad employees affected by particular transactions.
 
 
 12
 The district court correctly determined that the dispute between the parties is not a 'minor' dispute under the RLA and thus, is not subject to the grievance or arbitration proceedings of the RLA. The RLA, by its terms, applies only to disputes between an employer and its employees, and not employees of a third party. See 45 U.S.C. Sec. 153, First (i); 45 U.S.C. Sec. 151, Fifth. Moreover, a minor dispute under the RLA is a dispute 'growing out of grievances or out of the interpretation of agreements concerning rates of pay, rules, or working conditions,' 45 U.S.C. Sec. 153, First (i). Such a dispute 'contemplates the existence of a collective agreement.' Elgin, J & E Railway Co. v. Burley, 325 U.S. 711, 723 (1945).
 
 
 13
 The dispute in this action is not between Grand Trunk and its own employees; rather, it is between Grand Trunk and employees of Toledo Terminal. Moreover, the dispute does not involve a collective bargaining agreement; it concerns an agreement entered into pursuant to 49 U.S.C. Sec. 11347 which requires rail carriers to protect employees affected by particular transactions for which ICC approval is required. The district court, therefore, correctly concluded that the dispute was not a minor dispute under the RLA and subject to the RLA's provisions.
 
 
 14
 Defendants also contend that they are covered under the language of Article III of the New York Dock conditions, which was incorporated into the September 4, 1979 agreement between Grand Trunk and UTU, and therefore, that they may invoke the arbitration provisions contained in Section 11 of the New York Dock conditions. The provision of Article III upon which defendants rely states, in part:
 
 
 15
 Subject to this appendix, as if employees of railroad, shall be employees, if affected by a transaction, of separately incorporated terminal companies which are owned (in whole or in part) or used by railroad . . .
 
 
 16
 Although ambiguous, this language appears to state that employees of terminal companies which are used by Grand Trunk and affected by a transaction are deemed employees of Grand Trunk for purposes of application of the appendix.
 
 
 17
 Grand Trunk maintains, however, that the September 4, 1979 agreement applies only to employees of Grand Trunk, DT&I and DTSL because Section 1 of the agreement states that the New York Dock conditions 'shall be applied for the protection of the interests of employees of GTW, [DT&I and DTSL]'. Since the September 4, 1979 agreement, an agreement to which UTU Local 787 is not a party, expressly incorporates the protections of the New York Dock conditions for employees of GTW, DT&I and DTSL and not for those of Toledo Terminal, defendants' claim that they are protected by the agreement must fail.
 
 
 18
 Thus, since the September 4, 1979 agreement does not cover the employees of Toledo Terminal, and the ICC Order affirmed by the Fourth Circuit did not require that Toledo Terminal employees be protected, defendants' claim that they are covered by the New York Dock conditions incorporated into the September 4, 1979 agreement must fail.
 
 
 19
 Accordingly, the district court's order enjoining defendants from arbitration under either the RLA or the New York Dock conditions is affirmed.
 
 
 20
 MERRITT, Circuit Judge, dissenting.
 
 
 21
 The question before us is whether the employees of Toledo Terminal are protected by the New York Dock conditions, not whether they were parties to the original September 4, 1979, agreement between Grand Trunk and UTU. UTU's argument is that Article III of the New York Dock conditions renders the 'employees' of Toledo Terminal the 'employees' of Grand Trunk for purposes of invoking the arbitration provision of the agreement. The relevant language in Article III is:
 
 
 22
 Subject to this appendix, as if employees of railroad, shall be employees, if affected by a transaction, of separately incorporated terminal companies which are owned (in whole or in part) or used by railroad . . ..
 
 
 23
 The Court concedes that this language 'appears to state that employees of terminal companies which are used by Grand Trunk and affected by a transaction are deemed employees of Grand Trunk for purposes of application of the appendix.' The Court insists, however, that the New York Dock conditions do not apply to the employees of Toledo Terminal because Section 1 of the September 4, 1979, agreement states expressly that the New York Dock conditions provide protections for the employees of Grand Trunk, DT&L and DTSL. Since the employees of Toledo Terminal were neither parties to the agreement, nor mentioned in Section 1, Article III of the New York Dock conditions cannot apply to them by virtue of Section 1.
 
 
 24
 There are two reasons for rejecting the Court's conclusion. First, Section 1 merely specifies the employees of the railroads to which the New York Dock conditions refer; it does not preclude employees of terminal companies being deemed employees of the named railroads. Second, there is no reason to suppose that Section 1 applies to the employees of the named railroads exclusively. If Section I applied exclusively to the named railroads, the relevant language in Article III is rendered null and void. The only way to give full effect to Article III is to say that employees of terminal companies which are used by Grand Trunk and affected by its transactions are deemed Grand Trunk employees for purposes of applying the appendix.
 
 
 25
 Finally, the District Court erred in holding that UTU's present claim is barred by the principles of res judicata. UTU is not presently litigating the claim rejected by the ICC, that the Railway Labor Act requires arbitration for employees of third-party carriers generally. Rather, UTU's present claim is that the New York Dock conditions, incorporated in the September 4, 1979, agreement, cover employees of Toledo Terminal by rendering them Grand Trunk employees for purposes of invoking the arbitration provision of the contract. This latter claim is a dispute over a provision of a contract between Grand Trunk and UTU, not one about the scope of a statute; it involves a set of operative facts different from the statutory claim, and hence is not barred by the principles of res judicata.
 
 
 26
 Accordingly, I would reverse the judgment of the District Court and remand the case to the District Court with instructions to remand for arbitration.
 
 
 
 [1]
 Under 49 U.S.C. Sec. 11347, when a railroad is involved in certain transactions, including the acquisition of other railroads, the ICC is required to ensure that the railroad provides protective provisions for employees affected by the transaction